IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

STEVEN R. GOSSETT                                                    PLAINTIFF

      VS.                        Civil No. 2:14-cv-02021-MEF

CAROLYN W. COLVIN,
Commissioner of Social Security Administration                       DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Steven R. Gossett, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB"), and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.  Procedural Background

Plaintiff protectively filed his applications for DIB and SSI on September 29, 2011, alleging an onset date of September 15, 2006, due to: asthma; major depression, recurrent, severe; anxiety disorder; attention deficit / hyperactivity disorder; and, low average intelligence. (T. 128-141, 166, 170) His applications were denied initially and on reconsideration. (T. 69-75, 78-81) Plaintiff requested an administrative hearing, and the hearing was held on August 20, 2012, before the Hon. Michael S. Hertzig, Administrative Law Judge ("ALJ"). (T. 82-83, 25-64) Plaintiff was present, along with his mother, Pam Cacey, and Plaintiff's family friend, Wontona Detona "Toni" Wilson.

-1-

A vocational expert, Floyd J. Massey, Jr., also appeared at the hearing. Plaintiff was represented at the hearing by counsel, David K. Harp. (T. 25, 27)

Plaintiff was 37 years old at the time of the hearing. (T. 33) He graduated from high school. (T. 33) Hhe had past relevant work ("PRW") experience as a groundskeeper on a golf course, a warehouse worker, and as a production worker. (T. 58-59, 176-183) Plaintiff last worked the week before the hearing, having worked two days for a temporary job agency. (T. 36)

In a Decision issued on October 29, 2012, the ALJ found that although Plaintiff has the following severe impairments, anxiety disorder and attention deficit hyperactivity disorder (ADHD) (20 C.F.R. § 404.1520(c) and 416.920(c)), Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (T. 11-14) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following non-exertional limitations: understand, remember, and carry out simple one and two step instructions; occasionally interact appropriately with co-workers, supervisors, and the general public; and, maintain attention and concentration for two hour blocks of time. (T. 14-18) With the assistance of a vocational expert, Floyd J. Massey, Jr., the ALJ determined that while Plaintiff is unable to perform his past relevant work (T. 18), Plaintiff could  perform the requirements of such representative occupations as a janitor or cleaner - industrial (DOT#381.687-018) of which there are 200 jobs in the region, as a kitchen helper, dishwasher (DOT#318.687-010) of which there are 1,500 jobs in the region, and as a hand packager (DOT#920.587-918) of which there are 300 jobs in the region. (T. 19, 60-61) The ALJ then concluded that Plaintiff has not been under a disability, as defined in the Social Security

Act, from February 17, 2011 through the date of the ALJ's Decision on October 29, 2012. (T. 19-20)

Plaintiff appealed this decision to the Appeals Council (T. 4), but said request for review was denied on November 29, 2013. (T. 1-3) Plaintiff then filed this action on January 23, 2014. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 7) Both parties have filed appeal briefs, and the case is ready for decision. (Doc. 12 and 13)

## II.  Standard of Review; Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving her disability by

establishing a medically determinable physical or mental impairment that has lasted at least one year and that prevents her from engaging in substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382(3)(c). A claimant must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require application of a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. 20 C.F.R. §§ 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the claimant's age, education, and work experience in light of his or her residual functional capacity. *McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520 and 416.920 (2003).

### III.  Discussion

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff was not disabled from the alleged date of onset on February 17, 2011 through the date of the ALJ's Decision on October 29, 2012. Plaintiff raises

four issues on appeal: (A) the ALJ did not fully and fairly develop the record; (B) Plaintiff has additional severe impairments; (C) the ALJ's RFC determination is inconsistent with the record; and, (D) Plaintiff cannot perform the jobs identified at Step Five. (Doc. 12, pp. 10-19)

### A.  Duty to Fully and Fairly Develop the Record

The ALJ has a duty to fully and fairly develop the record. See, *Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exists "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992), quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983).  The ALJ, however, is not required to act as Plaintiff's counsel. See, *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a "reasonably complete" record); see also, *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) (reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994).

The need for medical evidence does not necessarily require the Commissioner to produce additional evidence not already within the record. An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision. *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001). An ALJ is not required to order a consultative evaluation; he "simply has the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989); see also, *Haley v. Massanari*, *Supra* at 749 (ALJ need not order

additional examinations if there is substantial evidence in the record to make an informed decision).

Plaintiff argues that the record is lacking a useful, quantifiable statement of the work activities that are limited by Plaintiff's mental impairments. The Court disagrees. Providing specific medical evidence to support his disability claim is, of course, the Plaintiff's responsibility, and that burden of proof remains on him at all times to prove up his disability and present the strongest case possible. See, *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991); 20 C.F.R. §§ 404.1512(a) and (c), 416.912(a) and (c). Considering the record as a whole in the present case, the ALJ was not required to further develop the record because it was already "reasonably complete," and it contained sufficient evidence from which the ALJ could make an informed decision.

The record contains Plaintiff's treatment records dating back to 1993 when Plaintiff was in high school. It also includes more recent treatment records and reports of detailed evaluations concerning Plaintiff's alleged disabling physical and mental conditions. More specifically, these records include the following: a psychological evaluation report dated October 26, 1993, when Plaintiff was 18 years old and in the twelfth grade, prepared by Mary Snell, LPC (Ex. 3F; T. 229-238); a psychological evaluation report dated March 24, 1997, when Plaintiff was 22 years old, prepared by Linda K. Strawser, M.S. and approved by Morris H. Middleton, Ph.D. (Ex. 1F; T. 222-225); a psychological screening evaluation report dated February 17, 2011, when Plaintiff was 36 years old, prepared by Letitia C. Hitz, Ph.D. of the Arkansas Rehabilitation Department (Ex. 2F; T. 226-228); clinic records from Plaintiff's primary care physician dating from December 2, 2003 through May 1, 2012 (Ex. 13F; T. 321-331); a psychological report dated June 7, 2011 prepared by Clayton Mitchell, Ph.D. of Western Arkansas Counseling & Guidance Center ("WAC&GC") (Ex. 5F; T. 249-252); hospital records pertaining to treatment of acute asthmatic bronchitis on August 31,

2011 (Ex. 6F; T. 253-264); a case analysis report dated November 11, 2011 prepared by Jerry Thomas, M.D. (Ex. 9F; T. 288), followed by a case analysis report dated January 16, 2012 prepared by Valeria Malek, M.D. (Ex. 11F; T. 297); a mental diagnostic evaluation report dated November 28, 2011 prepared by Kathleen M. Kralik, Ph.D. (Ex. 7F; T. 265-273); a psychiatric review technique report dated December 8, 2011 prepared by Cheryl Woodson-Johnson, Psy.D. (Ex. 8F; T. 274-287); a mental residual functional capacity assessment report dated December 8, 2011 prepared by Cheryl Woodson-Johnson, Psy.D. (Ex. 10F; T. 293-296); a diagnostic evaluation report dated February 21, 2012, and a master treatment plan report dated March 23, 2012, both prepared by Steve Washington, LPC of WAC&GC (Ex. 12F, 15F; T. 303-306, 339-344); an evaluation/diagnosis report dated April 27, 2012 prepared by Alice Slavins, APN of WAC&GC (Ex. 12F; T. 307-310); and, a pharmacological management report dated August 10, 2012 prepared by Alice Slavins, APN of WAC&GC (Ex. 16F; T. 350-351). The Court does not believe that these medical records leave some crucial issue undeveloped or under-developed. To the contrary, the medical evidence of record documents in detail the evaluation and treatment of Plaintiff's physical and mental impairments for a period of nearly twenty years, and it provides a sufficient basis for the ALJ's decision. The ALJ was not, therefore, obligated to obtain even more medical evidence to develop the record further.

If Plaintiff wanted to present more specific information in addition to the medical evidence of record, he should have done so. See, *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993)(". . . it is of some relevance to us that the lawyer did not obtain (or, as far as we know, try to obtain) the items that are now being complained about").

Reversal for failure to fully and fairly develop the record is warranted only where such failure is unfair or prejudicial. *Haley, Supra* at 748. Plaintiff has not shown that the ALJ failed to develop

the record in an unfair or prejudicial manner. Plaintiff's argument on this point must be rejected.

## B.  Additional Severe Impairments

Plaintiff next argues that the ALJ erred in not finding that Plaintiff had some additional severe impairments. Plaintiff points to evidence that he has been diagnosed with major depressive disorder, intellectual deficits, and personality disorder, and that these impairments also affect his work functioning and should have also been considered to be severe. This argument also lacks merit.

Step two of the five-step evaluation to determine if a claimant is disabled states that a claimant is not disabled if his impairments are not "severe." *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001). An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). While severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989), it is also not a toothless standard, and the Eighth Circuit Court of Appeals has upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g., Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007); *Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Simmons*, 264 F.3d at 755; *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); and, *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996). A mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. See, *Trenary v. Bowen*, 898 F.2d

1361, 1364 (8th Cir. 1990). Considering the record as a whole, the Court finds that Plaintiff has failed to present evidence showing that the diagnoses of major depressive disorder, intellectual deficits, and personality disorder had more than a minimal effect on his ability to perform basic work activities.

### 1.  Major Depressive Disorder:

The ALJ noted that Plaintiff had been diagnosed with a mood disorder back in 1997. (T. 12) This diagnosis was actually a "provisional" diagnosis of mood disorder, NOS, for which counseling and "possible medication" were thought advisable. (T. 223-224) There is no subsequent record that Plaintiff ever actually sought any such counseling or other treatment for this provisional diagnosis. The ALJ also acknowledged that Plaintiff was more recently diagnosed with major depression that was recurrent and severe without psychotic features during his evaluation and treatment at WAC&GC. (T. 12) The ALJ found no evidence establishing that a diagnosis of mood disorder was accurate, nor that it would last 12 consecutive months. (T. 12) Plaintiff takes issue with that finding, arguing that the ALJ was "playing doctor." (Doc. 12, p. 11-12) Not mentioned by Plaintiff, however, and consistent with the ALJ's finding, is that the medical evidence of record contains conflicting evidence of a diagnosis of a mood or depressive disorder by some medical sources at WAC&GC, but not by other medical professionals who performed thorough mental evaluations of Plaintiff.

Following Plaintiff's release from prison on January 20, 2011, he sought the services of the Arkansas Department of Rehabilitation Services to help find employment, and an extensive psychological screening evaluation was performed by Letitia C. Hitz, Ph.D. on February 17, 2011. (T. 34-35, 226-228) While Plaintiff related to Dr. Hitz having a history of ADHD as a child, and still being negatively affected by ADHD symptoms, he related no symptoms of any depression. (T. 227)

-9-

Dr. Hitz diagnosed Plaintiff with ADHD, predominantly inattentive type, and no diagnosis was given for any mood or depressive disorder. (T. 228) Kathleen M. Kralik, Ph.D., a consultative examiner, also performed a thorough mental evaluation of Plaintiff on November 28, 2011. Dr. Kralik considered the reports and diagnoses given by WAC&GC as part of her evaluation (T. 265), and she noted that Plaintiff "is not receiving any medication management for any of the mental symptoms alleged - despite having gone to Western Arkansas Counseling and Guidance Center as recently as this past May." (T. 267) Dr. Kralik diagnosed ADHD - predominantly inattentive type, anxiety disorder NOS, and personality disorder NOS, but no diagnosis was given for any mood or depressive disorder. (T. 271)

Based on an April 27, 2012 diagnosis of "major depression, recurrent, severe, without psychotic features" by Alice Slavins, APN of WAC&GC, a trial of Paxil 20 mg was initiated. (T. 346-347) During a return visit to APN Slavins on May 25, 2012, Plaintiff stated that since starting Paxil "he feels less angry and less depressed," that his mood has improved, that his sleep has improved, that "he enjoys fishing and hanging out with his friends," and he denied side effects from Paxil except for occasional stomach upset. (T. 348) When Plaintiff returned to APN Slavins on August 10, 2012, he described his mood as "depressed but improved," and that he thought Paxil was somewhat effective. His dosage of Paxil was increased to further address his symptoms. (T. 350-351) The medical evidence indicates that Plaintiff's symptoms of a depressive disorder were effectively managed with medication, that he noted improvement, and that he enjoyed activities with his friends. See, *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010)(depression that improved with regimen of medication and counseling was not severe); *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)(the ALJ properly found that the claimant had no severe impairments where the impairments

were controlled by medication).

Upon examination of the evidence of record, the ALJ's conclusion "that there is also no evidence establishing that a diagnosis of a mood disorder is accurate, nor that it will last 12 consecutive months," is supported by substantial evidence.

### 2.  Intellectual Deficits:

Plaintiff contends that the ALJ erred in his decision to exclude Plaintiff's intellectual deficits from his step two finding, arguing that the ALJ relied on half-truths to make his determination. (Doc. 12, p. 12-13) The Court finds this argument lacking.

As to Plaintiff's claim that he has borderline intellectual functioning, the ALJ noted that the medical records from WAC&GC show that Plaintiff's IQ scores fall within the range of 71-84 range. (T. 12, 249) The ALJ discounted such testing for several reasons. One reason the ALJ suspected that IQ testing to be invalid was that Plaintiff, who had recently been discharged from prison and had previously been discharged from the Army for performance reasons, denied any legal or military history when presenting to WAC&GC. The ALJ found Plaintiff's explanation for the denial - that Plaintiff misunderstood the question - to be unpersuasive. Even so, the ALJ found the IQ scores to be inconsistent with Plaintiff's adaptive functioning abilities. The ALJ noted that the IQ scores (which start in 1997) show low average scores, but the Plaintiff received a high school diploma and had only a few remedial classes. Moreover, in contrast to the IQ scores at WAC&GC, the Plaintiff's earlier IQ testing placed his intellectual functioning in the low average to average range. (Ex. 1F, T. 222-225; Ex. 2F, 226-228; Ex. 3F, 229-238)

Also troubling to the ALJ was Toni Wilson's involvement on behalf of Plaintiff. Ms. Wilson, the Executive Director of Stepping Stone, a school for developmentally disabled children and adults,

testified that the Plaintiff "functions in the mild to borderline level of mental retardation," and that there is no difference between low average functioning and mental retardation. (T. 54-56) The ALJ found that Ms. Wilson's testimony and actions in this case "clearly manifest bias in favor of presenting him in the worst possible light," and that her letter (Ex. 1F; T. 163-165) and testimony are not credible. The Court must agree. It is apparent from the evidence of record that Ms. Wilson is a friend of Plaintiff's mother; and, although Plaintiff is admittedly not a client of Stepping Stone (T. 35), Ms. Wilson represented in her letter to the SSA that Plaintiff was "referred" to her, and she accompanied Plaintiff to virtually every appointment Plaintiff has had in connection with his claim. (T. 163-165, 167, 169, 175, 183, 186, 194) Ms. Wilson even went with Plaintiff to see Dr. Kralik, and Dr. Kralik observed that Plaintiff deferred completion of paperwork to Ms. Wilson despite having been asked to do it himself. (T. 265) Dr. Kralik also commented that, "this individual has also introduced herself as a representative of Stepping Stone (apparently to heighten the perception claimant was cognitively limited) - though he described her as a friend of his family, and is only receiving 'assistance' with his DDSSA application informally/unofficially from her . . . He is NOT a Stepping Stone client." (T. 266)

Dr. Kralik also noted that Plaintiff "manifested here a seemingly exaggerated naïve, passive-dependent style - this seemingly his rendition of 'below average intelligence'- stylistically more akin to that of someone scoring in the mild mental retardation to borderline intellectual functioning ranges." (T. 265) It was only when Plaintiff inadvertently revealed that he had computer literacy skills inconsistent with the lower functional level that he acknowledged to Dr. Kralik adequate literacy. (T. 265) Plaintiff informed Dr. Kralik that he was working part-time moving pallets of crackers; that he liked his job; liked that it was intermittent; admitted that he can perform the job

competently; and, he voiced disinterest in taking on any other part-time or full-time positions that would enable him to work more steadily. (T. 265-266) Plaintiff admitted that some of his past job losses were for rule violations, as opposed to not understanding or remembering the rules. (T. 266) Dr. Kralik commented that "he does not seem here particularly motivated to overcome any obstacles - real or perceived, to obtaining and/or maintaining steady employment," and that "[h]is investment seems to be in maintaining his façade of someone so cognitively impaired and dependent as to not be able to function without assistance." (T. 267) Dr. Kralik estimated Plaintiff's intellectual capacity to be in the low average to average range. (T. 269) This is consistent with the testing performed by Dr. Hitz on February 17, 2011 for the Arkansas Department of Rehabilitation Services. (T. 228)

Taking the evidence of record as a whole, the ALJ's determination that Plaintiff's intellectual deficits are not severe is supported by substantial evidence.

### 3.  Personality Disorder:

Plaintiff next argues that he has been diagnosed with personality disorder, and that this would also cause work-related limitations beyond the scope of anxiety and ADHD. (Doc. 12, p. 13) This argument also lacks merit.

While pointing out that more than one source has diagnosed Plaintiff with personality disorder, Plaintiff does not specifically indicate how such diagnosis limits his work-related abilities. One of the sources who diagnosed Plaintiff with a personality disorder was Cheryl Woodson-Johnson, Psy.D. (T. 274); however, in her mental RFC assessment Dr. Woodson-Johnson also reported that: "[claimant's] condition as presented would not preclude his handling work related activities on a sustained basis. [Claimant] would be capable of completing tasks which are simple to moderate in complexity; adhere to a schedule and complete a normal workweek [without]

-13-

interruption due to psychiatrically based [symptoms]." (T. 296) Another source who diagnosed Plaintiff with a personality disorder was Dr. Kralik. (T. 271) Nevertheless, Dr. Kralik opined that "[n]othing in what he reported and manifested here would seem to examiner of a nature or severity such as to preclude participation in gainful occupational endeavors . . ." (T. 271)

There is substantial evidence to support the ALJ's determination that Plaintiff's diagnosed personality disorder is not severe.

### C.  RFC Determination

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Adequate medical evidence must therefore exist that addresses the claimant's ability to function in the workplace. See, *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ is not at liberty to make medical judgments regarding the ability or disability of a claimant to engage in gainful activity where such inference is not warranted by clinical findings. *McGhee v. Harris*, 683 F. 2d 256 (8th Cir. 1982). The ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations: to understand, remember, and carry out simple one and two step instructions; to occasionally interact appropriately with co-workers, supervisors, and the general public; and, to maintain attention and concentration for two-hour blocks of time. (T. 14-18) Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence of record. The Court disagrees.

### 1.  Additional Environmental Limitations:

Initially, it must be noted that Plaintiff does not dispute the ALJ's finding that Plaintiff can perform work at all exertional levels, and he has, therefore, waived any issue regarding this finding.

-14-

See, *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008)(claims not raised in the opening brief are deemed waived). Plaintiff's only argument regarding physical limitations is that his asthma was not properly considered by the ALJ in determining RFC. More specifically, Plaintiff contends that he must avoid respiratory irritants due to his asthma and, that while not disabling on its own, it must be a component of a proper RFC. (Doc. 12, p. 14-15)

The medical evidence fails to show how Plaintiff's asthma should result in any limitation of his work activities. Plaintiff's asthma has been successfully treated for many years with medication. During an office visit on March 29, 2005, it was noted that "patient has been taking singulair for allergies and asthma - patient unclear as to why - lungs clear today - no cough - no wheezing." (T. 246) On May 20, 2005, Plaintiff reported that his asthma "has been under control." (T. 244) On May 17, 2006, he complained of sneezing and a runny nose, stating that he "cuts grass for a living," and his prescription for Singulair was refilled. (T. 242) More recently, on September 1, 2011, Plaintiff complained of wheezing and chest tightness for five days that prompted him to go to the emergency room where he was given Prednisone. Symbicort was prescribed. (T. 240) Plaintiff returned to his physician on December 1, 2011, at which time he reported having no asthma attacks since his last visit, but he complained of nasal congestion and questioned whether he should also be continued on Singulair. Both Symbicort and Singulair were then prescribed. (T. 323) The last office visit of record occurred on May 1, 2012. Plaintiff reported that he was "doing great" on the Symbicort and Singulair, and that he had no nighttime symptoms and no activity intolerance. The physician's assessment was to control Plaintiff's asthma with the current regimen of medications. (T. 322) At no time during Plaintiff's treatment of asthma has his physician advised of any need to restrict Plaintiff's activities in any way or to avoid any environmental irritants such as dust, gases, fumes,

odors, etc.  See, *Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000)(the absence of physician ordered limitations or restrictions in the medical record is a relevant factor in discounting plaintiff's subjective complaints). Further, state agency reviewing physicians have found that Plaintiff's asthma is not severe. (T. 288, 297) Substantial evidence supports the ALJ's decision not to include environmental limitations in the RFC determination.

### 2.  Additional Mental Limitations:

Plaintiff next asserts that the ALJ's statement of Plaintiff's mental limitations is inconsistent with the medical evidence. Among other things, Plaintiff argues that the medical evidence shows that he worked better if he only had to work for short periods of time; that he found it difficult to work independently; that he had difficulty understanding and following instructions; that he had problems concentrating, interacting with others, and working without interference from psychological symptoms; and, that he would have difficulty maintaining an adequate production level. (Doc. 12, p. 15) These contentions are without merit.

The Court finds that the ALJ properly considered the medical evidence as a whole when determining Plaintiff's RFC. The ALJ noted that Plaintiff was diagnosed with ADHD as a child and took Ritalin, and that while there was some support for the diagnosis as an adult, it was going untreated. (T. 14) The ALJ also noted that Plaintiff was diagnosed with anxiety disorder. (T. 14) The ALJ found that Plaintiff's allegations concerning the severity of his impairments are inconsistent with the objective medical evidence. From a careful examination of the record, the Court must agree.

Plaintiff's treatment for his mental impairments are, and have been, limited to only out-patient care with counseling sessions, and his only psychiatric medication has been an anti-depressant, Paxil. (T. 17, 37, 248-252, 303-320, 348-351) While Plaintiff took Ritalin as a child for

-16-

his ADHD, he discontinued taking it. (T. 222, 227, 232, 249, 266) He does not now take any medication for his ADHD. (T. 37, 266) Despite Plaintiff's testimony that he is unable to work due to his mental impairments, he never reported to his physicians that his treatment was ineffective. (T. 248-252, 303-320, 348-351) Additionally, Plaintiff has not sought any alternative treatment, suggesting that his current treatment regimen is effective. (T. 248-252, 303-320, 348-351) See, *Banks v. Massanari*, 258 F.3d 820, 825-26 (8th Cir. 2001) (ALJ properly discounted claimant's complaints of disabling depression as inconsistent with daily activities and failure to seek additional psychiatric treatment); *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

Plaintiff testified and argues that he has significant deficits in concentration and persistence, but his treatment records show that his concentration is intact, good or only mildly impaired. (T. 39, 304, 309, 351) The ALJ noted that Plaintiff regularly engages in activities requiring concentration, such as hunting, fishing, camping, horseback riding, and watching television all day long. (T. 17, 38, 191) He drives a car on his own. (T. 190) Further, Plaintiff recently worked in a temporary job he liked, admitted that he could perform the job competently, but he voiced disinterest in taking on any other work that would enable him to work more steadily. (T. 37, 265-266) There is substantial evidence of record, taken as a whole, to support the conclusion that Plaintiff does not have limitations beyond those in expressed in the ALJ's RFC finding.

The ALJ considered a mental evaluation completed by Dr. Letitia Hitz on 2/17/11. (T. 15-16) Dr. Hitz performed the mental evaluation in connection with Plaintiff's request for services from the Arkansas Department of Rehabilitation Services. (T. 35, 226-228) Dr. Hitz diagnosed Plaintiff with

ADHD - predominantly inattentive type, and she estimated his intellectual and academic functioning in the low average to average range. (T. 228) Dr. Hitz concluded that training in a lower level vo-tech program was feasible, and that with supportive counseling and vocational development, Plaintiff "may reasonably be expected to sustain independent functioning by means of competitive employment." (T. 228) The ALJ gave this assessment "great weight," noting that  Dr. Hitz had specialized knowledge in diagnosing mental impairments, had personally examined the Plaintiff, was an acceptable medical source, and provided a medical source statement. (T. 16) Plaintiff argues that the ALJ's RFC limitations do not match Dr. Hitz's report and are therefore inconsistent. Not so. Plaintiff only points out certain "weaknesses" that Dr. Hitz felt may manifest themselves in a vocational setting, but this is only part of the picture. The "weaknesses" identified by Dr. Hitz are not, as suggested by Plaintiff, behaviors that *would* affect job performance, but merely behaviors that *could* affect job performance. Dr. Hitz has not recommended any restrictions or limitations based upon Plaintiff's "weaknesses," but rather, she has only suggested counseling and guidance in vocational choice and placement. Nonetheless, and after having considered both Plaintiff's strengths and weaknesses, Dr. Hitz concluded that Plaintiff "may reasonably be expected to sustain independent functioning by means of competitive employment." This is substantial evidence that supports the ALJ's RFC finding.

The ALJ also gave great weight to the mental diagnostic evaluation performed by Dr. Kralik on November 28, 2011. (T. 15-16) The ALJ noted that Dr. Kralik reported that even if Plaintiff's alleged limitations were taken at face value, there was nothing that would preclude participation in gainful occupational endeavors. (T. 16, 271) Dr. Kralik clearly expressed concern that Plaintiff was "not a very good informant - often pleading ignorance . . . somewhat suspect at times," "he seems

-18-

to be realistically concerned something he says or writes might result in benefits being denied," that his "[l]evel of cooperation was fair at best - overtly pleasant and cooperative, but not wholly forthcoming and honest about his abilities, motivations, intentions, etc.," and that "[e]xaminer would not rule out some malingering/exaggeration of difficulty." (T. 265, 268-269) In light of such concerns, Plaintiff argues that Dr. Kralik's "cynicism seemed to get in the way of her objectivity, as evidenced by the fact that her evaluation of Plaintiff's functioning and limitations is inconsistent with each and every other examining professional." (Doc. 12, p. 16) To the contrary, Dr. Kralik's diagnosis and assessment, on the whole, is consistent with the other medical evidence of record. She reported that Plaintiff's capacity to perform daily activities of daily living and daily adaptive functioning was only mildly impaired. (T. 272) This is consistent with Plaintiff's Function Report (Ex. 6E; T. 187-194), the psychological evaluation performed on March 20, 1997 (Ex. 1F; T. 222-225), and Dr. Hitz's assessment on February 17, 2011 (Ex. 2F; T. 226-228) Dr. Kralik indicated that Plaintiff's ability to communicate and interact in a socially adequate manner was adequate; that his capacity to communicate in an intelligible and effective manner was generally adequate; that his capacity to cope with the typical mental/cognitive demands of basic work-like tasks seemed adequate; that his ability to sustain concentration on basic tasks and sustain persistence in completing tasks seemed only moderately impaired; and, that his capacity to complete work-like tasks within an acceptable time frame seemed only mildly to moderately impaired. (T. 272). These findings are also consistent with the above-mentioned evidence of record.

To the extent Dr. Kralik observed some elements of malingering and/or exaggeration of symptoms and difficulties by Plaintiff, and motivational and secondary gain issues, the ALJ could properly consider that. See, *DuBois v. Barnhart*, 137 Fed. Appx. 920, 921 (8th Cir. 2005);

-19-

*Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004); *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996). See also, *Foster v. Astrue*, 277 Fed. Appx. 462, 466 (5th Cir.2008) (an ALJ can discount a claimant's credibility where the claimant exhibits a willingness to provide false or exaggerated information for secondary gain).

The ALJ's RFC finding limited Plaintiff to unskilled work. (T. 14, 18) The regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). This finding is consistent with the assessments of both Dr. Kralik and Dr. Hitz. It is also consistent with the medical opinions of state agency physicians in assessing Plaintiff's RFC. (T. 293-296, 300) In her report dated December 8, 2011, Cheryl Woodson-Johnson, Psy.D., stated that, "[t]he claimant is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled)." (T. 295) That assessment was confirmed on January 11, 2012 by Kay Cogbill, M.D. (T. 300) The ALJ gave the opinions of the state agency consultants significant weight because they are supported by the medical evidence records. (T. 18) It was not error to do so. See, *Stormo v. Barnhart*, 377 F.3d 801, 807-808 (8th Cir. 2004)(opinions of state agency medical consultants supported the ALJ's RFC finding); 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

The ALJ also appropriately considered the Plaintiff's activities of daily living in determining his RFC. Plaintiff reported that he is able to get dressed, prepare simple meals, occasionally vacuum, mow the lawn, count change, go outside daily, drive a car, shop in stores, engages in hobbies such as hunting, fishing, camping, and horseback riding, spends time with friends two to three times

weekly, goes to church weekly, and attends football games. (T. 187-191) The ALJ found that Plaintiff's ability to perform these various activities showed that Plaintiff could meet the requirements of unskilled work. (T. 16) The Court agrees that these activities further support the ALJ's RFC determination. See, *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992)(claimant's daily activities, including light housekeeping, cooking, watching television and reading, were consistent with the RFC finding for light work); *Stormo*, 377 F.3d at 807 (claimant's activity level supported the ALJ's RFC finding).

Plaintiff's part-time work activities after his alleged date of onset further support the ALJ's RFC finding. The week prior to the administrative hearing, Plaintiff worked a couple of days through a temporary staffing agency. (T. 36) He testified that he also worked for a company stacking pallets of crackers (T. 36), and he reported to Dr. Kralik that he liked this job and could perform it competently. (T. 265). Despite liking the job, and being able to perform it competently, Plaintiff voiced to Dr. Kralik disinterest in taking on other part-time or full-time positions that would enable him to work more steadily. (T. 265) When asked the reason why he could not do any form of full-time work, Plaintiff could not say, though he again stated to Dr. Kralik that was disinterested in working full-time or even more consistently part-time. (T. 266) Dr. Kralik's impression was that Plaintiff's "avoidance of more steady pursuits" is deliberate, "as little is and has been expected of him by others over time." (T. 266) Dr. Kralik commented further:

> "He seems likely to do the minimum required of him, to try to 'get away with what he can' - and seems disinclined to change this pattern unless he perceives it as both necessary and to his advantage to do so. For now, working part time, engaging with friends in leisure activities he enjoys, and living at home under his mother's care seem sufficient for him." (T. 272)

The fact that Plaintiff has engaged in part-time work activities after his alleged onset date, and that his deliberate avoidance of full-time work - as opposed to any objectively established inability to engage in full-time unskilled work, also supports the ALJ's finding that Plaintiff can work at the unskilled level with the limitations noted in the RFC. See, *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000)(claimant held employment with current cognitive abilities; claimant's mental impairments did not prevent him from engaging in substantial activities of daily living).

Considering the record as a whole, including the medical evidence regarding Plaintiff's impairments, the observations of treating and examining experts, the opinions of state agency consultants, Plaintiff's admitted activities of daily living, his work activities, and the testimony presented at hearing, there is substantial evidence to support the ALJ's RFC determination. See, *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)(ALJ is responsible for determining RFC based on all relevant evidence, including medical evidence, observations of treating physicians and others, and claimant's description of his limitations). Plaintiff has failed to establish that additional limitations are warranted based on the evidence of record. See, *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003)(it is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC).

Plaintiff also "points out" that while the ALJ discredited the testimony of Plaintiff and his witnesses, the ALJ "did not do so in accordance with the relevant legal standards." (Doc. 12, p. 18) Aside from this general and conclusory remark, the Plaintiff does not otherwise brief this issue, nor does Plaintiff assert the ALJ's credibility determination as a point on appeal. Such conclusory assertions or issues raised without adequate briefing and no analysis of relevant law or facts are rejected out of hand. See, *Vanderboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005). Even so, an

examination of the ALJ's Decision shows that the ALJ gave detailed and sufficient reasons in support of his credibility findings.

## D.  Step Five Analysis

The ALJ found that Plaintiff could not perform his past relevant work as a groundskeeper on a golf course, a semi-skilled, medium exertion job[1]. (T. 18) Considering Plaintiff's age, education, work experience, and RFC at step five of the sequential analysis, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 19) More specifically, and in reliance upon the vocational expert's testimony, the ALJ found that Plaintiff could perform the requirements of representative occupations such as a janitor/cleaner (18,450 jobs nationally/200 in the state), a kitchen helper/dishwasher (191,000/1,500), and a hand packager (42,000/300). (T. 19) Plaintiff argues that the hypothetical questions posed by the ALJ to the vocational expert were improper, were not based on the evidence, and that the vocational expert's testimony could not, therefore, support the ALJ's finding. (Doc. 12, p. 18-19)

At step five in the sequential process, the ALJ must determine if the claimant can make an adjustment to other work. See 20 C.F.R. § 404.1520(a)(4)(v). Where a claimant suffers from a non-exertional impairment, the ALJ must obtain the opinion of a vocational expert instead of relying on the Medical–Vocational Guidelines. See, *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir.2006). Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's

---

[1]This appears to give Plaintiff the benefit of any doubt based on the ALJ's finding that Plaintiff is limited to unskilled work and the VE's testimony that the groundskeeper position is semi-skilled. The VE, however, testified that Plaintiff, even with the non-exertional limitations imposed by the assessed RFC, could still do his past work as a production worker, warehouse worker/laborer stores, and also the groundskeeper job. (T. 59)

deficiencies. See, *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007).

At the administrative hearing, the ALJ posed two hypothetical questions to the vocational expert. The first hypothetical asked the vocational expert to assume a younger individual with a high school diploma and the same work history as the Plaintiff; that the individual had no exertional limitations; and, that the individual had the following non-exertional limitations: can understand, remember and carry out simple one and two step instructions, could maintain attention and concentration up to two hour blocks of time, and can occasionally interact appropriately with the general public, supervisors and co-workers. (T. 59) In response to this hypothetical, the vocational expert testified that, "[t]he work as the production worker would still be intact," "he could also return to the laborer stores at the cracker company and also the groundskeeper job in my opinion." (T. 59) The second hypothetical altered the amount of time the individual could maintain attention and concentration to one hour. (T. 59) In response to that hypothetical, the vocational expert testified that the groundskeeper job at the golf course would still be open, as "you pretty well work much as an individual there and kind of do your work at your own pace." (T. 60) Upon clarifying that the second hypothetical meant that after one hour of maintaining attention and concentration the individual would need a few minutes, "like alternating sitting and standing except you're alternating concentrating and then not concentrating," the vocational expert testified that the individual could perform a job as a janitor or industrial cleaner, a kitchen helper/dishwasher, and a hand packager. (T. 60-61)

The ALJ relied upon the vocational expert's responses to his hypothetical questions to find that Plaintiff could perform jobs existing in significant numbers in the national economy. (T. 18-19) Plaintiff's argument on this issue, that a more restricted hypothetical question was needed, reflects

nothing more than a restatement of Plaintiff's argument concerning the ALJ's RFC finding. Contrary to Plaintiff's contention, an ALJ is not required to question the vocational expert regarding all of the subjective and self-imposed limitations allegedly arising from a claimant's impairments, but only those limitations that the ALJ finds supported by the record as a whole. See, *Perkins v. Astrue*, 648 F.3d 892, 901-902 (8th Cir. 2011)(the hypothetical question must capture the concrete consequences of the claimant's deficiencies; the ALJ may exclude any alleged impairments that he has rejected as untrue or unsubstantiated); *Howe v. Astrue*, 499 F.3d 835, 842 (8th Cir. 2007)(a hypothetical need only include impairments that are supported by the record and that the ALJ accepts as valid). In this case, the ALJ properly evaluated the medical and other evidence of record in assessing Plaintiff's RFC, included all of the limitations he accepted as substantiated and valid in his hypothetical questions to the vocational expert, and properly relied upon the vocational expert's responses to those hypothetical questions in finding that Plaintiff was able to perform jobs existing in significant numbers in the national economy. As such, the ALJ's determination is supported by substantial evidence. See, *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996)(testimony from a vocational expert based on a properly phrased hypothetical question constitutes substantial evidence).

## IV.  Conclusion

Having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying Plaintiff benefits. The ALJ's decision should be, and it hereby is, affirmed. Plaintiff's Complaint should be dismissed with prejudice.

DATED this 20th day of February, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

-25-